IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


DOLE AIR, INC.                                                                                    PLAINTIFF


VS.                              CASE NO.: 4:10-CV-04147-SOH


CITY OF TEXARKANA, ARKANSAS;
HORACE SHIPP, Individually and in His
Official Capacity as Mayor of Texarkana,
Arkansas; TEXARKANA AIRPORT
AUTHORITY; STEVEN LUEBBERT,
Individually and in His Official Capacity as
Director of the Texarkana Airport Authority                         DEFENDANTS


### MEMORANDUM OPINION

Pending is a Motion for Partial Summary Judgment filed by Defendants City of Texarkana, Arkansas; Horace Shipp, individually and in his official capacity as Mayor of Texarkana, Arkansas[1]; Texarkana Airport Authority; and Steven Luebbert, individually and in his official capacity as Director of the Texarkana Airport Authority (Defendants). (ECF No. 20). The Plaintiff has responded in opposition (ECF No. 25), and the Defendants have replied (ECF No. 27). The matter is ripe for the Court's consideration. For the following reasons, the Defendants' Motion for Summary Judgment will be granted.

### BACKGROUND

Gary Doehla is the Plaintiff's representative and presence in this case. All of the Plaintiff's actions in this case were taken through Gary Doehla, and so the Court will refer to both Dole Air, Inc. and Gary Doehla as the Plaintiff.

---

[1] The Plaintiff separately moved to dismiss Horace Shipp and the City of Texarkana, Arkansas from the case (ECF No. 23), and the Court granted that motion. (ECF No. 31). Horace Shipp and the City of Texarkana, Arkansas are therefore no longer parties in this action.

1

The Plaintiff bought a circa-1947 Lockheed L-18 airplane in May 2007. The plane was stored at the Texarkana Airport when the Plaintiff bought it, and had been since 1998. It was not flyable when the Plaintiff bought it, or any time after. The Plaintiff expressed an intention to salvage the aircraft, and Mr. Luebbert, the Director of the Texarkana Airport Authority, offered the Plaintiff rent-free storage until August 2007, though the basis of that offer is in dispute. Mr. Luebbert says the offer was induced by the Plaintiff's commitment to remove the plane by August 2007; the Plaintiff denies making that commitment.

By November 2007, the Plaintiff had not salvaged or removed the plane. Mr. Luebbert called the Plaintiff and told him that the airport would charge rent for storing the plane past December 1, 2007. The Plaintiff agreed to the charges and noted his intention to work on the plane after Thanksgiving. Mr. Luebbert sent the Plaintiff a letter on December 13, 2007 reaffirming that the airport would charge the Plaintiff beginning January 1, 2008. The charge would be $585 per month, and would accrue until the storage site was vacant and clean. The Plaintiff received this letter and understood that he was being charged, but he does not recall when he first saw it.

Mr. Luebbert has no record of the Plaintiff responding to his December letter, but in May 2008 the Plaintiff came to the airport to work on the plane. He was denied access because he had not paid any rent. The Plaintiff then paid $2,535 in past-due rent to gain access to the plane. That was the only rent the Plaintiff ever paid. The Plaintiff removed the plane's engines and propellers and sent them to Little Rock.

Mr. Leubbert's next contact with the Plaintiff was in May 2009, when the Plaintiff sent Mr. Luebbert a letter claiming to have called, written, and personally appeared to discuss rental issues "to no avail." No one at the airport, however, recalls seeing the Plaintiff between May

2008 and May 2009, and the airport telephone system recorded no messages from the Plaintiff during that period.

On June 30, 2009, Mr. Leubbert sent a response to the Plaintiff's May 2009 letter. Mr. Luebbert's letter noted his attempts to contact the Plaintiff, recounted the events between the parties so far, and stated the Plaintiff's past-due balance of $7,308.50. Two attempts were made to deliver that letter to the Plaintiff's Miami address. Neither was successful.

Mr. Luebbert wrote the Plaintiff again on August 10, 2009, recounting the events between the parties, and stating a past-due balance of $8,789.05. This letter claimed to be a final notice to the Plaintiff to remove his plane and pay his past-due balance or else face a lien and involuntary removal of his plane. Mr. Luebbert noted that Texarkana, Arkansas City Code § 3-87 authorized that removal. Again, two attempts were made to deliver this letter, this time, by FedEx. And again, neither was successful. FedEx returned the letter with a code indicating that the Plaintiff refused to sign for the letter.

Unbeknownst to Mr. Luebbert, however, the Plaintiff had written Mayor Horace Shipp on August 7, 2009 to complain about his dealings with Mr. Leubbert. The Plaintiff also asked Mayor Shipp to file an insurance claim for damage to the Plaintiff's plane. Mayor Shipp forwarded that letter to Mr. Luebbert.

Mayor Shipp responded to the Plaintiff's letter on August 24, 2009. The Mayor claimed to have no idea what damage and insurance issues the Plaintiff was talking about, and noted that a qualified mechanic had seen only damage caused by age and exposure to the elements, for which the airport was not responsible. The Mayor also told the Plaintiff that, to recover the plane, he must pay the past-due rent and remove the plane within 30 days. If the Plaintiff did not pay and remove, the Mayor said, then the plane would be declared abandoned and disposed of.

On September 30, 2009, the Plaintiff responded to the Mayor's letter, demanding more information. The city attorney responded on October 12, 2009, requesting that the Plaintiff pay the past-due balance and remove his plane by October 23, 2009. That October 12th letter was the Defendants' last contact with the Plaintiff before this suit was filed. On November 16, 2009, the Airport Authority declared the plane abandoned, and donated it to a Missouri man who removed the plane from the airport.

The Plaintiff filed suit on October 13, 2010, claiming the Defendants were state actors who deprived the Plaintiff of its property without due process. The Plaintiff's sole claim was made under 42 U.S.C. § 1983. The Defendants now move for summary judgment, arguing that they are immune from the Plaintiff's tort claims[2] and that the Plaintiff had no property interest in its month-to-month rental contract with the airport when the plane was taken.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

---

[2] Because the Plaintiff denies making a tort claim, the Court will not discuss such claims. (ECF No. 25, at 2).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986).  A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 256.

## DISCUSSION

The Plaintiff claims the Defendants violated 42 U.S.C. § 1983 by taking its property without due process. It claims a contractual right to store its plane at the Texarkana Airport, and argues that the state-actor Airport Authority violated that right by giving the plane away. The Defendants argue that the undisputed facts show that the contract was terminated and the plane declared abandoned *before* they gave the plane away. Thus, the Defendants argue, they did not take the Plaintiff's property in violation of its due-process rights, and summary judgment is appropriate.

5

1. **Due-Process Property Interest**

The Fourteenth Amendment's promise of procedural due process is violated when a protected property interest is at stake, the interest is taken, and it is taken without sufficient process. *Wooten v. Pleasant Hope R-VI Sch. Dist.*, 270 F.3d 549, 551 (8th Cir. 2001). A contract, including a lease, may be a property interest. *Singleton v. Cecil*, 176 F.3d 419, 421–22 (8th Cir. 1999) (contract may create property interest protected by the Due Process Clause); *Gentry v. City of Lee's Summit, Mo.*, 10 F.3d 1340, 1343 (8th Cir. 1993) ("A leasehold and the trade fixtures located on it are undoubtedly property rights."). So may personal property used in connection with a contract. *Rockland Vending Corp. v. Creen*, No. 07-cv-6268 (KMK), 2009 WL 2407658, at *5 (S.D.N.Y. Aug. 4, 2009) (vending machines used in connection with a contract are due-process property).

The Parties agree that they had an implied contract for an indefinite term with monthly rent reserved. In Arkansas, that arrangement creates a month-to-month tenancy. *Coley v. Westbrook*, 206 Ark. 1111, 178 S.W.2d 991, 993 (Ark. 1944). The Plaintiff thus had a contract property interest in that tenancy.[3] Because the plane was stored in connection with that contract, it too was a protected property interest.

2. **Due Process Taking**

The Plaintiff must do more than show that it had a property interest in its contract and plane at *some* time. It must also show that it had those property interests on November 16, 2009, when the plane was removed. If it did not, then no property interest was taken. The Defendants

---

[3] The Plaintiff argues that the contract in this case was a bailment contract, but the Court disagrees. A bailment exists where property is delivered for a purpose and then returned to the deliverer after the purpose is fulfilled. *Hinkle v. Perry*, 296 Ark. 114, 120, 752 S.W.2d 267, 270 (Ark. 1988). The delivery must exclude the possession of the owner and all others, and thus give the bailee sole custody. *Bertig Bros. v. Norman*, 101 Ark. 75, 141 S.W. 201, 204 (Ark. 1911); Howard W. Brill, *Arkansas Law of Damages* § 17:5 (5th ed. 2004) ("For a bailment to occur, the owner must part with control of the chattel."). Here, the Plaintiff never lost control and possession of its plane and, accordingly, the Defendants never had sole custody. For that reason, the Parties' contract was not a bailment contract.

argue that the property interests ended before November 16, 2009 because the contract was properly terminated on October 1, 2009, and the plane became abandoned that same day. The Plaintiff argues that the contract was not terminated before November 16, 2009, and that the plane was not abandoned.

    2.1    *Contract termination*

As noted above, the Parties had a month-to-month tenancy. An Arkansas month-to-month tenancy may be terminated by either party giving 30 days' written notice, and the termination becomes effective at the end of a monthly period. *Robinette v. French*, 20 Ark.App. 102, 724 S.W.2d 196, 198 (Ark. Ct. App. 1987). The Defendants contend that they properly terminated the contract by giving the Plaintiff adequate notice. The Plaintiff contends that the contract was not terminated by that notice, because the Defendants continued to seek past-due rent. The Court finds that the contract was properly terminated.

The Defendants' first notice was the August 10, 2009 letter from Mr. Luebbert to the Plaintiff claiming, in bold font, to be the Plaintiff's final notice to remove his plane and settle his past-due rent by September 15, 2009. That letter was sent by FedEx, which made two attempts to deliver the letter to the Plaintiff and then returned it to Mr. Luebbert with a code showing that the Plaintiff refused to sign for the letter. The Court finds that the August 10th letter gave adequate notice and effectively terminated the contract on October 1, 2009, which was 30 days later plus the remainder of the next monthly period.

Additionally, Mayor Shipp's letter to the Plaintiff on August 24, 2009 was effective to terminate the contract. That letter was received by the Plaintiff, and stated:

> If you want to recover the airplane in question, you will need to pay the delinquent storage rental on the airplane and remove it from the premises of the Texarkana Airport Authority within the next thirty days. If you do as you have done in the past and do nothing within this thirty day deadline, Texarkana Airport

>Authority, consistent with Arkansas law, will regard the airplane as abandoned property and will dispose of the airplane as it sees fit. (ECF No. 7-4, at 1).

That notice unambiguously terminated the contract. Mayor Shipp expressed no intention of remaining under contract with the Plaintiff, even if the Plaintiff paid his past-due rent. That termination too became effective on October 1, 2009. Thus, the Plaintiff's contractual property interest in storing its plane at the airport terminated on October 1, 2009, more than a month before the Defendants gave the plane away on November 16, 2009.

The Court is not persuaded by the Plaintiff's argument that the Defendants' insistence on past-due-rent payments precludes them from arguing that the contract was terminated. The Plaintiff cites no law for this argument, and its reasoning for it is not persuasive. The Defendants did not forfeit their right to seek past-due rent from the Plaintiff by terminating the contract.

Because the Defendants properly terminated the contract well before November 16, 2009, the Plaintiff had no property interest in the contract when the plane was removed.

### 2.1  *Property abandonment*

When a party abandons the premises under contract and the fixtures on it, the party no longer has an interest for the Constitution to protect. *Gentry v. City of Lee's Summit, Mo*, 10 F.3d 1340, 1345 (8th Cir. 1993). In Arkansas, property left on the premises after a lease is terminated is deemed abandoned and left to the will of the lessor. ARK. CODE ANN. § 18-16-108 (West 2012). The statute, unlike common-law abandonment, does not require intent to abandon. Indeed, property left at lease termination "shall be considered abandoned." ARK. CODE. ANN. § 18-16-108; *Omni Holding & Dev. Corp. v. C.A.G. Investments, Inc.*, 370 Ark. 220, 230, 258 S.W.3d 374, 381 (Ark. 2007) ("[W]ith the termination of [lessee's] right as a lessee in a tenancy at will to remain on the property…, any property left behind was abandoned."); *Harris v. Whipple*, 63 Ark.App. 84, 974 S.W.2d 482, 483 (Ark. Ct. App. 1998) ("By leaving the washer,

dryer, and various items of clothing in the trailer when she moved, appellee abandoned the property to whatever disposition that [lessor] made of it.").

In this case, when the Defendants properly terminated their lease with the Plaintiff on October 1, 2010, the Plaintiff's plane was deemed abandoned under § 18-16-108 and left to the Defendants. The Plaintiff's property interest in its plane thus terminated well before the Defendants removed it on November 16, 2009.

## CONCLUSION

Because the undisputed facts show that the Plaintiff no longer had a constitutionally protected property interest in its storage contract or its plane when the Defendants had the plane removed, the Defendants' Motion for Partial Summary Judgment (ECF No. 20) should be and hereby is **GRANTED**. The Plaintiff's Complaint (ECF No. 6) is **DISMISSED WITH PREJUDICE**.

The only remaining claim in this case is the Defendants' counterclaim for $9,000 in past-due rent, and this Court has only supplemental jurisdiction over that claim. 28 U.S.C. § 1367(a). The Court declines to continue exercising supplemental jurisdiction over that state-law claim, having dismissed all claims over which it has original jurisdiction in this case. 28 U.S.C. §1367(c)(3); *D.J.M. ex rel. D.M. v. Hannibal Pub. Sch. Dist. No. 60*, 647 F.3d 754, 767 (8th Cir. 2011). The Defendants' counterclaim for past-due rent is therefore **DISMISSED WITHOUT PREJUDICE**.

An order of even date consistent with this Opinion shall issue.

IT IS SO ORDERED, this 11th day of April, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge
